**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | |
|---|---|
| OPT-OUT SERVICES LLC<br>P.O. Box 600344<br>Jacksonville, Florida 32260,<br><br>Plaintiff,<br><br>v.<br><br>OPTPUTPRESCREEN.COM,<br>OPOUTPRESCREEN.COM,<br>OPTOUTPRESCEEN.COM, and<br>OPTOUTPRESECREEN.COM,<br><br>Defendants. | Civil Action No. 1:26-cv-3705 |

**VERIFIED COMPLAINT**

Plaintiff Opt-Out Services LLC ("Opt Out Services"), by counsel, alleges as follows for its *in rem* Complaint against Defendants optputprescreen.com, opoutprescreen.com, optoutpresceen.com, and optoutpresecreen.com (the "Domain Names").

**NATURE OF THE SUIT**

1. This is an *in rem* action for cybersquatting under the Federal Anti-Cybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d), and trademark infringement under the Lanham Act, 15 U.S.C. § 1114(1)(a).

2. Cybercrime incidents continue to rise, year over year, and cybersquatting is a major vehicle for such incidents. Cybersquatters register domain names that make unauthorized use of others' trademarks or obvious typos thereof, and use those domains to establish websites and email addresses that appear to be associated with legitimate companies. The domain names can be used for a variety of bad acts, including creating commercial confusion to induce

consumers to purchase fake goods or engage with fake services, phishing, distribution of malware, and even business email impersonation and fraud. The public harm from these crimes is staggering—in 2025, FBI reported $3 *billion* in losses from business email compromise alone, with hundreds of millions more losses caused by phishing and malware.

3. This case presents paradigm typosquatting (a subcategory of cybersquatting, in which the domain name differs from a trademark only with respect to a minor typo), for the apparent purposes of misdirection and impersonation. All four Defendant Domain Names are a single letter off from Opt Out Services registered and incontestable OPTOUTPRESCREEN mark, which Opt Out Services uses to offer trusted financial services, including at its legitimate website at optoutprescreen.com.

4. All four Defendant Domain Names have been configured for email usage, meaning that the registrant(s) can send out emails from addresses that look almost exactly like emails from Opt Out Services' legitimate website. And all four Defendant Domain Names have been configured with multiple third-level domain names (a third-level domain is essentially a subdomain, in the format [third-level domain].[second-level domain].[top-level domain], e.g., stage.optoutprescreen.com) that allow the registrant(s) to direct consumers to numerous different pages that create confusion with Opt Out Services' legitimate websites.

5. Opt Out Services' invaluable rights in the distinctive OPTOUTPRESCREEN mark have been deliberately infringed through the bad faith registration and use of the Defendant Domain Names, which are confusingly similar to the OPTOUTPRESCREEN mark. In order to maintain Opt Out Services' trademarks and consumer goodwill, and protect consumers from online bad actors, Opt Out Services hereby seeks relief from this ongoing cybersquatting and infringement.

## PARTIES

6. Opt Out Services is a limited liability company organized and existing under the laws of Delaware with a principal business address of 12276 San Jose Blvd., Suite 427, Jacksonville, Florida 32223.

7. optputprescreen.com is an Internet domain name which, according to public registration records, is registered to an unknown individual or entity who has taken steps to conceal his/her/its identity. A copy of the domain name registration record is attached as Exhibit 1. This domain is set up to enable email usage, and to support numerous subdomains including ww38.optputprescreen.com, webvpn.optputprescreen.com, khyyzsslvpn.optputprescreen.com, staging.optputprescreen.com, api.optputprescreen.com, www.vpn.optputprescreen.com, ww5.optputprescreen.com, m.optputprescreen.com, backup.optputprescreen.com, stage.optputprescreen.com, www.cloud.optputprescreen.com, new.optputprescreen.com, dev.optputprescreen.com, rqkebwww.marketing.optputprescreen.com, api-prod-usw1.optputprescreen.com, www.apps.optputprescreen.com, www.zzrlkv2.optputprescreen.com, www.ssl.optputprescreen.com, www.qa.optputprescreen.com, fmfmthnwjbww25.ww3.optputprescreen.com, and rds.optputprescreen.com.

8. opoutprescreen.com is an Internet domain name which, according to public registration records, is registered to an unknown individual or entity who has taken steps to conceal his/her/its identity. A copy of the domain name registration record is attached as Exhibit 2. This domain is set up to enable email usage, and to support numerous subdomains including admin.opoutprescreen.com, backup.opoutprescreen.com, temp.opoutprescreen.com, www.sitemap.opoutprescreen.com, dev.opoutprescreen.com, v1.opoutprescreen.com, ww5.opoutprescreen.com, ww16.opoutprescreen.com, www.remote.opoutprescreen.com,

ww1.opoutprescreen.com, workflow.opoutprescreen.com, www.crm.opoutprescreen.com, ww25.new.webmail.opoutprescreen.com, wta-sts.web.opoutprescreen.com, v2.opoutprescreen.com, www.forum.opoutprescreen.com, www.ww5.opoutprescreen.com, cmjrileo.opoutprescreen.com, mta-sts.dashboards.opoutprescreen.com, rds.opoutprescreen.com, www.www.opoutprescreen.com, www.ww38.opoutprescreen.com, ww25.blog.opoutprescreen.com, mta-sts.crm.opoutprescreen.com, ww25.dev.opoutprescreen.com, www.pop.opoutprescreen.com, and bjqxtaqgepmisdxww17.store.opoutprescreen.com.

9. optoutpresceen.com is an Internet domain name which, according to public registration records, is registered to an unknown individual or entity who has taken steps to conceal his/her/its identity. A copy of the domain name registration record is attached as Exhibit 3. This domain is set up to enable email usage, and to support numerous subdomains including crm.optoutpresceen.com, blog.optoutpresceen.com, admin.optoutpresceen.com, docs.optoutpresceen.com, cloud.optoutpresceen.com, ww16.app.optoutpresceen.com, m.optoutpresceen.com, dev.optoutpresceen.com, customer.optoutpresceen.com, www.intranet.optoutpresceen.com, forums.optoutpresceen.com, wiki.optoutpresceen.com, siqwpmta-sts.ww3.optoutpresceen.com, www.forum.optoutpresceen.com, operations.optoutpresceen.com, ww16.notexistsww3.optoutpresceen.com, www.ww6.optoutpresceen.com, www.notexistsstage.optoutpresceen.com, webapp.optoutpresceen.com, www.dev.optoutpresceen.com, ww25.vpn.optoutpresceen.com, www.cloud.optoutpresceen.com, ww16.ww6.optoutpresceen.com, www.demo.optoutpresceen.com, www.docs.optoutpresceen.com,

ww25.ww6.optoutpresceen.com, sitemap.optoutpresceen.com, www.nllrmww17.optoutpresceen.com, and ww16.ww3.optoutpresceen.com.

10. optoutpresecreen.com is an Internet domain name which, according to public registration records, is registered to an unknown individual or entity who has taken steps to conceal his/her/its identity. A copy of the domain name registration record is attached as Exhibit 4. This domain is set up to enable email usage, and to support numerous subdomains including webmail.optoutpresecreen.com, backup.optoutpresecreen.com, dashboard.optoutpresecreen.com, marketing.optoutpresecreen.com, forum.optoutpresecreen.com, store.optoutpresecreen.com, office.optoutpresecreen.com, register.optoutpresecreen.com, psql01.optoutpresecreen.com, porxnwww.random.optoutpresecreen.com, ww5.optoutpresecreen.com, ww16.optoutpresecreen.com, www.psql01.optoutpresecreen.com, remoteapp.optoutpresecreen.com, qsnjaeur.optoutpresecreen.com, ww17.12.optoutpresecreen.com, ww25.sitemap.optoutpresecreen.com, www.random.optoutpresecreen.com, ww17.mail1.optoutpresecreen.com, ww16.dash.optoutpresecreen.com, ww16.notexistsbeta.optoutpresecreen.com, sslvpn.optoutpresecreen.com, v2.optoutpresecreen.com, ww17.remote.optoutpresecreen.com, www.workflow.optoutpresecreen.com, control.optoutpresecreen.com, cloud1.optoutpresecreen.com, deploy.optoutpresecreen.com, ww17.form.optoutpresecreen.com, sitemaps.optoutpresecreen.com, bwohqwww.ww16.optoutpresecreen.com, web02.optoutpresecreen.com, ugwcscan1caac35fe040a562191adf1d365985a8.optoutpresecreen.com, 1116ww1.optoutpresecreen.com, ww25.api.optoutpresecreen.com, smtps.optoutpresecreen.com, vfgzkww16.home.optoutpresecreen.com, www.notavalid.optoutpresecreen.com,

ww25.temp.optoutpresecreen.com, ww25.redash.optoutpresecreen.com, www.cloud.optoutpresecreen.com, ww17.notexistsbeta.optoutpresecreen.com, stg.optoutpresecreen.com, and www.bi.optoutpresecreen.com.

## JURISDICTION, VENUE AND JOINDER

11. This is a civil action for federal cybersquatting in violation of the Anti-Cybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d), and for trademark infringement under the Lanham Act, 15 U.S.C. § 1114(1)(a).

12. This Court has original jurisdiction under 15 U.S.C. § 1121(a) and 28 U.S.C. §§ 1331 and 1338(a).

13. This Court has *in rem* jurisdiction over the Defendant Domain Names pursuant to 15 U.S.C. § 1125(d)(2)(A). *In rem* jurisdiction is appropriate under 15 U.S.C. § 1125(d)(2)(A)(ii) because the identifying information for the registrant(s) of the Defendant Domain Names has been entirely concealed from the publicly available registration records by the registrant(s), and therefore Plaintiff cannot obtain *in personam* jurisdiction over a person who would have been a defendant in a civil action under 15 U.S.C. § 1125(d)(1)(A) and/or Plaintiff, despite its due diligence, has been unable to find a person who would have been a defendant in a civil action under 15 U.S.C. § 1125(d)(1)(A).

14. Pursuant to 15 U.S.C. § 1125 Services' (d)(2)(A)(ii)(II)(aa), Opt Out Services will give notice of the violations of Opt Out rights, and Opt Out Services' intent to proceed *in rem*, to the postal and email addresses set forth in the registration records for each of the Defendant Domain Names or, where no postal or email address is available, to the domain name registrar.

15. Venue is proper in this District pursuant to 15 U.S.C. § 1125(d)(2)(C) in that the .COM domain name registry operator, VeriSign, Inc., is situated in this judicial district, and the Defendant Domain Names are all .COM domain names.

16. Joinder of the Defendant Domain Names is proper under Fed. R. Civ. P. 20(a)(2) in that the *in rem* cybersquatting and trademark infringement claims set forth herein arise out of the same series of transactions and the same questions of law are common to all of the Defendant Domain Names.

**OPT OUT SERVICES'S RIGHTS**

17. Opt Out Services was created in 2004 to provide consumers with a centralized service to accept and process requests from consumers to "Opt-In" or "Opt-Out" of firm offers of credit or insurance in accordance with the Fair and Accurate Credit Transactions Act. 15 U.S.C. § 1681 et seq. Opt Out Services uses the mark OPTOUTPRESCREEN to offer its services, and has done so since its inception.

18. Opt Out Services provides this service to consumers through a website available at optoutprescreen.com. The main website at optoutprescreen.com provides information regarding and access to the services, and Opt Out Services also operates numerous third-level domains under optoutprescreen.com, e.g., stage.optoutprescreen.com and qa.optoutprescreen.com.

19. OPTOUTPRESCREEN is the only service/site authorized by the major Consumer Credit Reporting Companies and regularly promoted by the U.S. Federal Trade Commission ("FTC") and the Consumer Financial Protection Bureau ("CFPB") to provide this service.

20. As a result of the promotion of the OPTOUTPRESCREEN mark and optoutprescreen.com domain name by Opt Out Services, the FTC, and the CFPB, and the

corresponding media coverage, consumers immediately associated the OPTOUTPRESCREEN mark and the optoutprescreen.com domain name with Opt Out Services.

21. Through promotion of OPTOUTPRESCREEN by Opt Out Services, the FTC, and the CFPB for over 20 years, the OPTOUTPRESCREEN mark has become famous and/or distinctive throughout the United States in connection with Opt Out Services' services.

22. The domain optoutprescreen.com averages tens of thousands of site "hits" per day and millions of visitor sessions yearly.

23. The Defendant Domain Names represent unauthorized colorable imitations of the OPTOUTPRESCREEN mark, which further demonstrates that the OPTOUTPRESCREEN mark has acquired distinctiveness and was famous and/or distinctive prior to the time of registration of the Defendant Domain Names.

24. Consumers have come to distinguish and recognize the legitimacy of Opt Out Services' services as a result of the use and widespread promotion of the OPTOUTPRESCREEN mark, and the OPTOUTPRESCREEN mark is entitled to common law trademark rights.

25. The OPTOUTPRESCREEN mark is also registered on the Principal Trademark Register of the U.S. Patent and Trademark Office under incontestable registration number 4073252. *See* Exhibit 5.

26. Opt Out Services' federal registration for the OptOutPrescreen mark is *conclusive* evidence of the validity of the mark, of Opt Out Services' ownership of the mark, and of Opt Out Services' exclusive right to use the mark in U.S. commerce.

**UNLAWFUL REGISTRATION AND/OR USE OF THE DOMAIN NAMES**

27. The Defendant Domain Names all incorporate the OPTOUTPRESCREEN mark with extremely minor typographical errors (a single letter replaced, added, or omitted). The

registration and use of the Defendant Domain Names reflect a type of cybersquatting known as "typosquatting."

28. On information and belief, the Defendant Domain Names were registered for the purpose of obtaining Internet visitors when such visitors make a typographical error on their keyboard when attempting to reach optoutprescreen.com by typing "OptOutPrescreen."

29. The websites hosted at each of the Defendant Domain Names demonstrate an intent by the registrant to benefit from the confusion of these misdirected visitors. The main pages of the websites at Defendant Domain Names optputprescreen.com, opoutprescreen.com, and optoutpresecreen.com are all configured to display pay-per-click advertisements, through which the operator likely receives compensation for clicks generated by misdirected visitors who were attempting to access the OPTOUTPRESCREEN service.

30. On information and belief, the website at Defendant Domain Name optoutpresceen.com distributes malware that can be used to steal sensitive and confidential information from visitors. Screenshots of the webpages are included as Exhibit 6.

31. While these main webpages create risk for consumers, they are not the extent of the dangers posed by the Defendant Domain Names. Each of the Defendant Domain Names currently supports numerous third-level domains that allow for additional opportunities for misdirection. Some of those third-level domain names mirror third-level domains that Opt Out Services uses with its legitimate domain (e.g., the legitimate third-level domain stage.optoutprescreen.com versus the Defendant Domain Names' support of stage.optputprescreen.com), thus lending the Defendant Domain Names even more false credibility.

32. Further, each of the Defendant Domain Names is configured for email usage, which allows the domain registrant to send out emails from email addresses using the domains (e.g., email@optputprescreen.com). This provides the opportunity for the registrant(s), or another bad actor associated with the registrant(s), to send emails impersonating employees of Opt Out Services.

33. The use of the OPTOUTPRESCREEN mark within the Defendant Domain Names and/or associated websites is without authorization from Opt Out Services.

34. On information and belief, the Defendant Domain Names do not and cannot reflect the legal name of the registrant(s) of the Domain Names.

35. On information and belief, the registrant(s) of the Defendant Domain Names has not engaged in bona fide commercial, noncommercial, or fair use of the OPTOUTPRESCREEN mark in a website accessible under the Domain Names.

36. The websites displayed by the registrant(s) of the Defendant Domain Names are likely to be confused with Opt Out Services' legitimate online location at optoutprescreen.com.

37. On information and belief, the registrant(s) of the Defendant Domain Names registered the Defendant Domain Names with intent to divert consumers away from Opt Out Services' online location at optoutprescreen.com, for commercial gain, by creating a likelihood of confusion as to the source, sponsorship, affiliation or endorsement of the Defendant Domain Names and the sites displayed through use of the Defendant Domain Names.

38. On information and belief, the registrant(s) of the Defendant Domain Names provided material and misleading false contact information when applying for and maintaining the registration of the Defendant Domain Names by intentionally concealing identifying information from the public.

39. On information and belief, the Defendant Domain Names were registered by the same person or entity and/or are under the control of the same person or entity.

**COUNT ONE:**
**(Violation of the Federal Anti-Cybersquatting Consumer Protection Act)**

40. Opt Out Services repeats and realleges each and every allegation set forth in the foregoing paragraphs, as though fully set forth herein.

41. Opt Out Services' federally registered OPTOUTPRESCREEN mark is famous and/or distinctive and was famous and/or distinctive prior to the operative registration of the Defendant Domain Names.

42. The aforesaid acts by the registrant(s) of the Defendant Domain Names constitute registration, maintenance, trafficking in, or use of domain names that are confusingly similar to Opt Out Services' OPTOUTPRESCREEN mark, with bad faith intent to profit therefrom.

43. In light of the registrant's concealment of the identities of the true owners of the Defendant Domain Names and/or the registrant's location outside the United States, Opt Out Services is not able to obtain *in personam* jurisdiction over the registrant(s) of the Defendant Domain Names or any other person who would have been a defendant in a civil action under 15 U.S.C. § 1125(d)(1)(A).

44. Opt Out Services, despite its due diligence, has been unable to find a person who would have been a defendant in a civil action under 15 U.S.C. § 1125(d)(1)(A).

45. The aforesaid acts by the registrant(s) of the Domain Names constitute unlawful cyberpiracy in violation of the Anti-Cybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d)(1).

46. The aforesaid acts have caused, and are causing, great and irreparable harm to Opt Out Services and the public. The harm to Opt Out Services includes harm to the value and

goodwill associated with the OPTOUTPRESCREEN mark that money cannot compensate. Unless permanently restrained and enjoined by this Court, said irreparable harm will continue. Thus, pursuant to 15 U.S.C. § 1125(d)(2)(D)(i), Opt Out Services is entitled to an order transferring the Defendant Domain Name registrations to Opt Out Services.

**COUNT TWO:**
**(In-Rem Trademark Infringement)**

47. Opt Out Services repeats and realleges each and every allegation set forth in the foregoing paragraphs, as though fully set forth herein.

48. At the time the Defendant Domain Names were registered and/or used, Opt Out Services possessed valid federal trademark rights in the OPTOUTPRESCREEN mark.

49. In light of the registrant's concealment of the identities of the true owners of the Defendant Domain Names and/or the registrant's location outside the United States, Opt Out Services is not able to obtain *in personam* jurisdiction over the registrant(s) of the Defendant Domain Names or any other person who would have been a defendant in a civil action under 15 U.S.C. § 1125(d)(1)(A).

50. Opt Out Services, despite its due diligence, has been unable to find a person who would have been a defendant in a civil action under 15 U.S.C. § 1125(d)(1)(A).

51. The registration and use of the Defendant Domain Names are a use in commerce.

52. The registration and use of the Defendant Domain Names affect Opt Out Services' ability to use its OPTOUTPRESCREEN mark in commerce.

53. The Defendant Domain Names and their respective registrant(s) have no valid rights in the OPTOUTPRESCREEN mark.

54. At the time the Defendant Domain Names were registered and/or used, the Defendant Domain Names and their respective registrant(s) were on actual and/or constructive

notice, pursuant to Section 22 of the Lanham Act, 15 U.S.C. § 1072, of the existence of Opt Out Services' superior rights in its OPTOUTPRESCREEN mark by reason of the existence, at that time, of Opt Out Services' federal trademark rights.

55. Use by the Defendant Domain Names and their respective registrant(s) of the OPTOUTPRESCREEN mark is without the permission or authorization of Opt Out Services.

56. The registration and/or use of the Defendant Domain Names has caused and is likely to continue to cause confusion, mistake and/or deception among consumers and the public, leading the public falsely to believe that the Defendant Domain Names and/or websites provided thereunder are those of, are sponsored or approved by, or are in some way connected with Opt Out Services.

57. The registration and use of the Defendant Domain Names constitute direct infringement of Opt Out Services' trademark rights in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

58. The aforesaid acts have caused, and are causing, great and irreparable harm to Opt Out Services and the public. The harm to Opt Out Services includes harm to the value and goodwill associated with the OPTOUTPRESCREEN mark that money cannot compensate. Unless permanently restrained and enjoined by this Court, said irreparable harm will continue.

## PRAYER FOR RELIEF

WHEREFORE, Opt Out Services respectfully requests of this Court:

1. That judgment be entered in favor of Opt Out Services on its claims of cybersquatting and trademark infringement.

2. That the Court order the Defendant Domain Names be transferred to Opt Out Services by the .com registry operator's change of the registrar of the Defendant Domain Names

to Opt Out Services' domain name registrar of choice and by such registrar's change of the registrant to Opt Out Services.

3. That the Court order an award to Opt Out Services of such other and further relief as the Court may deem just and proper.

Dated: November 9, 2026

By: /s/ Attison L. Barnes, III

Attison L. Barnes, III (VA Bar No. 30458)
David E. Weslow (*for pro hac admission*)
Adrienne J. Kosak (VA Bar No. 78631)
WILEY REIN LLP
2050 M St. NW
Washington, DC 20036
(202) 719-7000 (phone)
(202) 719-7049 (fax)
abarnes@wiley.law
dweslow@ wiley.law
akosak@wiley.law

*Counsel for Plaintiff*
*Opt Out Services LLC*

**VERIFICATION**

I, David Vaughn, General Manager of Opt Out Services LLC, declare under penalty of perjury under the laws of the United States of America, pursuant to 28 U.S.C. § 1746, that the facts contained in the foregoing Verified Complaint are true and correct to the best of my knowledge.

__/s/ David Vaughn___________
David Vaughn

___November 9, 2026_________
Date